UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL HARRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-7708** |
| **WARDEN LYNN COOPER** | **SECTION "F"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.     STATE COURT PROCEDURAL BACKGROUND

The petitioner, Michael Harris, is incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2] Harris was charged by bill of information in Jefferson Parish on January 6, 2000, with five counts of distribution of cocaine.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Deputy David Randall of the Jefferson Parish Sheriff's Office testified that, between June 28, 1999 and August 6, 1999, he was working as an undercover detective with the Narcotics Bureau. On June 28, 1999, Deputy Randall was instructed by his supervising officer to attempt an undercover narcotics purchase at or near 541 Wilson Street in Marrero because there had been complaints of illegal narcotics sales in that area. At approximately 2:00 p.m. that day, Deputy Randall proceeded to the area in an unmarked police van that was specially equipped with hidden video and audio recording capabilities.
> Still in his van, Deputy Randall approached a black man that he observed walking down the street and asked the man for "two twenties."[4] The black man placed two rocks in Deputy Randall's hand and Deputy Randall gave the man, later identified as defendant, $40.00 in cash. Deputy Randall then proceeded to a pre-arranged location and gave the backup agents working with him the narcotics and the videotape of the drug transaction.
> On July 8, 1999 and July 12, 1999, Deputy Randall returned to the 400 and 500 blocks of Wilson Street in another attempt to perform an undercover narcotics purchase. Deputy Randall drove the same unmarked van equipped with video and audio recording capabilities to the area and again purchased crack cocaine from defendant. On both occasions, the narcotics transactions were videotaped.
> During the July 12, 1999 transaction, defendant told Deputy Randall that, if Deputy Randall did not see him outside, Deputy Randall should sound his horn and defendant would come outside. Deputy Randall informed defendant that his vehicle's horn did not work so Deputy Randall would "holler" for him.

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 1/6/00 (as amended 4/5/00).

[4]"FN1. Deputy Randall testified at trial that "two twenties" is street slang for two $20.00 pieces of crack cocaine."

2

The next day, which was July 13, 1999, Deputy Randall again drove to defendant's home at 541 Wilson Street. Deputy Randall did not see defendant outside but observed the door of the house ajar and yelled to get defendant's attention. When defendant did not respond, Deputy Randall exited his vehicle and knocked on the door of the residence. After defendant invited Deputy Randall inside of his home, Deputy Randall informed defendant that he wanted to purchase two pieces of crack cocaine. Defendant responded that he did not have any but that he could bring Deputy Randall to a location where he could get some.

Deputy Randall returned to his van and followed defendant as he walked down Wilson Street. Defendant then entered the residence at 470 Wilson Street and returned with crack cocaine, which he sold to Deputy Randall.

Deputy Kim Blanche of the Jefferson Parish Sheriff's Office testified that she was working as an undercover narcotics agent on August 6, 1999. On that date, Deputy Blanche was instructed to go into the Wilson Street and Magnolia Drive area of Marrero to attempt an undercover narcotics purchase. Deputy Blanche, driving a van owned by the Jefferson Parish Sheriff's Office and equipped with audio and video transmitters, purchased two twenty-dollar rocks, which tested positive for crack cocaine, from an individual, who was later identified as defendant. The transaction was videotaped.

During Deputy Randall's testimony, videotaped recordings of the June 28, 1999, July 8, 1999, and July 12, 1999 narcotics transactions were shown to the jury. During Deputy Blanche's testimony, the videotaped recording of the August 6, 1999 narcotics transaction was shown to the jury.

Sergeant Joe Williams of the Jefferson Parish Sheriff's Office Narcotics Division, testified that from June 28, 1999 through August 6, 1999, he was supervisor of the undercover narcotics group, which was investigating complaints of distribution of crack cocaine from 541 Wilson Street and in the 500 block of Magnolia Drive. Sergeant Williams viewed the video recordings of the undercover narcotics transactions at the Detective Bureau and, as a result of previous encounters with the defendant, was able to identify the individual who sold narcotics to Deputy Randall and Deputy Blanche as defendant, Michael Harris. At his instruction, another officer compiled a photographic lineup, which contained defendant's photograph, and showed the lineup separately to Deputy Randall and Deputy Blanche. Both deputies positively identified defendant as the person that had sold them crack cocaine.

State v. Harris, 868 So.2d 886, 889-90 (La. App. 5th Cir. 2004); State Record Volume 5 of 6, Fifth Circuit Opinion, 03-KA-710, pages 3-5, February 23, 2004.

Harris was tried before a jury on October 31, 2001, and was found guilty as charged on all five counts.[5] The state trial court sentenced Harris on November 13, 2001, to 30 years in prison on each count, to be served concurrently and without benefit of parole, probation, or suspension of sentence.[6] The State filed a multiple bill charging Harris as a second felony offender.[7] The court also denied Harris's motion to reconsider the sentence.[8]

On December 13, 2002, the state trial court found Harris to be a second offender.[9] The court resentenced him on December 18, 2002, as to count one to 40 years in prison, to run concurrently with the prior sentences imposed on counts two through five.[10] The court also denied Harris's motion to reconsider that sentence.[11]

---

[5] St. Rec. Vol. 1 of 6, Trial Minutes (3 pages), 10/31/01; Jury Verdict (Count 1), 10/31/01; Jury Verdict (Count 2), 10/31/01; Jury Verdict (Count 3), 10/31/01; Jury Verdict (Count 4), 10/31/01; Jury Verdict (Count 5), 10/31/01.

[6] St. Rec. Vol. 1 of 6, Sentencing Minutes, 11/13/01.

[7] Id.; St. Rec. Vol. 1 of 6, Multiple Bill, 11/13/01.

[8] St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 11/14/01; Trial Court Order, 11/14/01.

[9] St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 12/13/02.

[10] St. Rec. Vol. 1 of 6, Sentencing Minutes, 12/18/02.

[11] Id.; St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 12/18/02.

On direct appeal, Harris's counsel raised four assignments of error:[12] (1) The trial court erred in failing to grant the defense's challenges for cause during voir dire related to jurors Freese and Guthrie. (2) The trial court erred in denying the motion to sever the counts for trial. (3) The sentence was excessive and the trial court failed to provide reasons for sentencing as required by La. Code Crim. P. art. 894.1. (4) The trial court erred in sentencing him to 30 years on each count without the benefit of parole, probation, or suspension of sentence for the full length of the sentences.

On February 23, 2004, the Louisiana Fifth Circuit affirmed the convictions and the sentences, as amended by its order.[13] The court held that Harris's claims concerning his jury challenges for cause and the denial of his motion to sever were without merit. The court also held that Harris waived any challenge to the trial court's failure to give sentencing reasons under La. Code Crim. P. art. 894.1 because that was not a ground preserved in the motions to reconsider the sentences.

The court also considered the sentences for constitutional excessiveness and found that argument meritless. The court found that the trial court erred in the sentencing because the sentences on counts two through five should have been imposed without

---

[12]State v. Harris, 868 So.2d at 890; St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 03-KA-710, p. 5, 2/23/04.

[13]State v. Gross, 810 So.2d 580 (La. App. 1st Cir. 2001) (Table); St. Rec. Vol. 2 of 4, First Circuit Opinion, 2001-KA-0520, pages 2-4, December 28, 2001.

5

benefit of parole, probation, or suspension of sentence only for the first five years. The appellate court amended the sentences on counts two through five to reflect that limitation.

In addition, the court discovered an error patent on the face of the record, in that the multiple offender sentence on count one should have been imposed without benefit of parole, probation, or suspension of sentence for the first five years. The court noted, however, that this would be corrected by operation of law and required no further action by the court.

Harris's counsel filed a writ application with the Louisiana Supreme Court raising only the issue regarding the failure to grant the challenges for cause related to jurors Freese and Guthrie.[14] The court denied the application without reasons on September 24, 2004.[15]

Harris's conviction became final 90 days later, on December 23, 2004, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States

---

[14] St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 04-K-675, 3/16/04; St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2004-K-675, 3/16/04.

[15] State v. Harris, 882 So.2d 1166 (La. 2004); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2004-K-0675, 9/24/04.

6

Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On January 20, 2005, Harris submitted a uniform application for post-conviction relief to the state trial court raising ineffective assistance of counsel on five grounds:[16] (1) Counsel failed to investigate and file motions. (2) Counsel failed to tell the trial court that he had represented juror Guthrie in a prior proceeding. (3) Counsel failed to state the proper grounds for reconsideration of the sentences. (4) Counsel failed to consult with Harris and inform him about the proceedings. (5) Counsel failed to inform Harris of the consequences of the judgment and his appeal rights.

The state trial court denied the application as meritless on January 31, 2005.[17] On review, the Louisiana Fifth Circuit denied Harris's application on April 1, 2005, finding no error in the trial court's ruling.[18] Harris did not seek further review of this order.

More than thirteen months later, on May 4, 2006, Harris wrote a letter to the clerk of the state court requesting another copy of the January 31, 2005, order denying his

---

[16] St. Rec. Vol. 5 of 6, Uniform Application for Post-Conviction Relief, 1/26/05 (signed 1/20/05).

[17] St. Rec. Vol. 5 of 6, Trial Court Order, 1/31/05.

[18] St. Rec. Vol. 5 of 6, 5th Cir. Order, 05-KH-336, 3/30/05.

7

application for post-conviction relief.[19] The record indicates that the clerk responded to his request on May 18, 2006.[20]

More than one year later, on July 31, 2007, Harris submitted a request for production of copies of certain record documents and transcripts.[21] The state trial court denied his request on August 14, 2007.[22] The Louisiana Fifth Circuit also denied his follow-up requests to that court referring him to the Louisiana Public Records Act and back to the trial court.[23] He did not seek further review of these rulings.

On May 19, 2008, Harris submitted to the state trial court a petition for issuance of a writ of habeas corpus pursuant to La. Code Crim. P. art. 351, alleging that he was denied a jury comprised of a cross-section of his peers.[24] On June 13, 2008, the state trial court determined that Harris was not eligible to file this petition under La. Code Crim. P. art. 351, construed the pleading as an application for post-conviction relief and denied it as successive under La. Code Crim. P. art. 930.4(D).[25]

---

[19]St. Rec. Vol. 5 of 6, Letter to the Court, 5/11/06 (dated 5/4/06).

[20]Id., stamped notation.

[21]St. Rec. Vol. 5 of 6, Motion for Production of Document, 8/3/07 (signed 7/31/07).

[22]St. Rec. Vol. 5 of 6, Trial Court Order, 8/14/07.

[23]St. Rec. Vol. 5 of 6, 5th Cir. Order, 07-KH-707, 10/2/07; 5th Cir. Order, 08-KH-515, 7/24/08.

[24]St. Rec. Vol. 5 of 6, Petition for Writ of Habeas Corpus, 5/22/08 (signed 5/19/08).

[25]St. Rec. Vol. 5 of 6, Trial Court Order, 6/13/08. La. Code Crim. P. art. 930.4(D) allows dismissal of a successive post-conviction application that raises repetitive claims which are not new or

The Louisiana Fifth Circuit subsequently denied Harris's writ application to that court on grounds that it was untimely, citing La. Cod Crim. P. art. 930.8.[26] On September 25, 2009, the Louisiana Supreme Court denied Harris's subsequent writ application, citing La. Code Crim. P. art. 930.8, State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995), and La. Code Crim. P. art. 351.[27]

## II.   FEDERAL HABEAS PETITION

On January 15, 2010, the clerk of this court filed Harris's petition for federal habeas in which he raised two grounds for relief:[28] (1) The trial jury was unconstitutionally empaneled and not comprised of a cross-section of his peers. (2) The state courts erred in finding his post-conviction habeas corpus claims barred by La. Code Crim. P. art. 930.8. The State filed a response in opposition to the petition, arguing that

---

different.

[26]St. Rec. Vol. 5 of 6, 5th Cir. Order, 08-KH-696, 9/25/08. At the time of his conviction, Article 930.8 provided that a defendant had two years to file for post-conviction relief.

[27]State ex rel. Harris v. State, 18 So.3d 89 (La. 2009); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2008-KH-2734, 9/25/09. In State ex rel. Glover, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court did not consider timeliness. Article 351 states that a writ of habeas corpus is not available to persons entitled to file an application for post conviction relief pursuant to La. Code Crim. P. art. 924 et seq.

[28]Rec. Doc. No. 3.

9

Harris's federal petition was <u>not</u> timely filed and that his claim is procedurally barred from review.[29]

## III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Harris's petition, which, for reasons discussed below, is deemed filed in this federal court on December 9, 2009.[31]

---

[29]Rec. Doc. No. 10.

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Harris's petition was filed by the clerk of court on January 15, 2010, when the filing fee was paid. His signature on the memorandum submitted with the form petition was dated December 9, 2009. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

10

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State argues and I find that Harris's petition was not timely filed in this court.

IV.  STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[32] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Harris's conviction was final on December 23, 2004. Thus, under a literal application of the statute, Harris had one year from the date his conviction became final

---

[32] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

11

or December 23, 2005, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and some rare or extraordinary circumstances existed which prevented timely filing. Holland v. Florida, 78 U.S.L.W. 4555, 2010 WL 2346549, at *12 (U.S., June 14, 2010) (slip op.) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Harris has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See Holland, 78 U.S.L.W. 4555, 2010 WL

2346549, at *14 (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to file a federal petition timely and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

14

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-

15

3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies, like those filed by this petitioner, are not other collateral review for purposes of the tolling calculation. Osborne v. Boone, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000); Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); Cf. Gonzales v. Wilkinson, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

The one-year AEDPA limitations period began to run in Harris's case on December 24, 2004, the day after his conviction was final. The limitations period ran for 27 days, until January 20, 2005, when Harris submitted his application for post-conviction relief in the state trial court. The application remained pending until May 2, 2005, when he did not seek review of the related order from the Louisiana Fifth Circuit.

The filing period began to run again on May 3, 2005, and did so uninterrupted for the remaining 338 days, until April 6, 2006, when it expired. Harris had no properly filed state post-conviction or other collateral review proceedings of any kind pending during that time period. His next such pleading was the petition for writ of habeas corpus submitted to the state trial court almost two years later by letter dated May 4, 2006.

Harris's efforts to obtain copies of record documents from the state courts do not provide him with any tolling benefit of the AEDPA statute of limitations. See Osborne, 1999 WL 203523, at *2. Nevertheless, I note that his first request for a copy was not sent to the clerk of the state trial court until May 4, 2006. This was more than one-year after his 2005 application for post-conviction relief was final and no longer pending for AEDPA purposes. His next request for copies was submitted to the state trial court more than one year later, on July 31, 2007. Thus, Harris allowed two separate periods more than one year in length to pass without any state court filings and without any properly filed state post-conviction or other collateral review pending in the state courts.

17

The record establishes that Harris allowed well more than one year to lapse without having any properly filed and pending state court post-conviction proceeding and without having filed a timely federal petition for habeas corpus relief. His federal habeas corpus petition deemed filed on December 9, 2009, is therefore time-barred and must be dismissed for that reason.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that the petition of Michael Harris for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[33]

                    New Orleans, Louisiana, this ___9th___ day of July, 2010.

                                        JOSEPH C. WILKINSON, JR.
                                    UNITED STATES MAGISTRATE JUDGE

---

[33]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.